IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

VERNON E. SMITH, )
 )
      Plaintiff, )
 )
v. ) Civil No. 10-577-CJP
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
 )
      Defendant. )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Vernon E. Smith is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying him Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).[1]

## Procedural History

Mr. Smith filed an application for benefits on July 16, 2007, alleging disability beginning on November 22, 2005. (Tr. 98). He had filed a previous application on July 21, 2006, alleging the same date of disability. That application was denied on September 1, 2006, and was not appealed. (Tr. 110, 114-115).

The present application was denied initially and on reconsideration. After holding a hearing, ALJ Sherwin F. Biesman denied the application for benefits in a decision dated October 26, 2009. (Tr. 13-23). Plaintiff's request for review was denied by the Appeals Council, and

---

[1]This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 34.

1

the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

**Issues Raised by Plaintiff**

Plaintiff argues that the ALJ erred in the following respects:

1. He improperly weighed the medical opinions.

2. His RFC assessment was not supported by substantial evidence.

3. He failed to properly assess Mr. Smith's credibility.

**Applicable Legal Standards**

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

---

[2]The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. It must be determined: (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **Schroeter v. Sullivan, 977 F.2d 391, 393 (7th Cir. 1992); see also, 20 C.F.R. §§ 404.1520(b-f).**

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether Mr. Smith is, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. **See, Books v. Chater, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing **Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995)**). This Court uses the Supreme Court's definition of substantial evidence, i.e, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Richard v. Perales, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. **Brewer v. Chater, 103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, **Parker v. Astrue, 597 F.3d 920, 921**

(7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Biesman followed the five-step analytical framework described above. He determined that Mr. Smith had not been engaged in substantial gainful activity since the alleged onset date, and that he has severe impairments of degenerative disc disease and obesity. He further determined that these impairments do not meet or equal a listed impairment. The ALJ found that Mr. Smith has the residual functional capacity to perform a full range of work at the sedentary exertional level, which leads to the conclusion that he is not disabled. (Tr. 13-23).

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Mr. Smith was born in 1972, and was 32 years old when he allegedly became disabled. (Tr. 98). He was last insured for DIB as of September 30, 2008. (Tr. 114).

He had previously worked as a brake press operator, a press operator, a die operator and a construction laborer. (Tr. 141-148). He submitted an Activities of Daily Living Questionnaire in which he stated that he could not bend over to pick up a coin or to ties his shoes, and that his wife has to help him in the shower. He stated that he has pain and burning in his low back and numbness in his legs which make it difficult for him to get in and out of a car, get up from a chair, and do things such as shop for groceries and prepare meals. He denied doing any household chores except for using a riding mower for 15 minutes at a time. He stated that he cannot play with his kids or hold his baby daughter. (Tr. 138-140).

Plaintiff completed a Work Activity Report in which he stated that he tried to work at Gilster's in October, 2006, but had to stop because of his medical condition. (Tr. 118-127).

**2.      Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing on July 21, 2009. (Tr. 48). He lived with his wife and 3 children. His wife was not employed. (Tr. 49).

His biggest problem was his back. He had some epidural shots, which gave him only temporary relief. (Tr. 49-50). He also complained of pain in the right thigh and buttock. (Tr. 51).

Plaintiff indicated that he hurt his back in 2000, but the pain subsided after treatment. Then, about 3 years ago, the pain returned. He had taken different pain medications and undergone epidural injections. (Tr. 53). At the time of the hearing, he weighted 346 pounds. (Tr. 53).

Mr. Smith testified that he was scheduled to have another injection in September, 2009, and, if that did not work, he was to consult with a neurosurgeon, Dr. Hadi, whom he had seen once before.[3] (Tr. 50). The ALJ indicated that he would wait to render his decision until Mr. Smith had the epidural injection in September. (Tr. 52).

The ALJ asked about side effects of pain medications. Plaintiff testified that he was taking 2 muscle relaxers, which made him drowsy. He was also taking a narcotic pain medication. (Tr. 56).

Plaintiff testified that he could not play with his 3 year old child or hold his 5 month old baby. (Tr. 56).

---

[3]Dr. Hadi's name is misspelled in the hearing transcript. (Tr. 50).

3. **Medical Records**

Mr. Smith was seen at the Carbondale Clinic for back pain in January, 2006. He was 6'2" tall and weighed 384 pounds, with a BMI of 49. He complained of back pain with radiation down his right thigh. He was prescribed Elavil and ibuprofen. (Tr. 177-178).

On May 17, 2006, Mr. Smith went to the emergency room at Memorial Hospital of Carbondale, complaining of back pain after a four-wheeler accident. The history states, "was on a 4-wheeler jumping off a drop off, was going to hit and (sic) object and pulled back on the 4-wheeler and felt something 'pop' in middle back." (Tr. 300). X-rays of his lumbar spine were normal. The vertebral bodies were of normal height with normal disc spaces. There was no evidence of compression fracture and no arthritic changes noted. (Tr. 304). He was given Vicodin and Flexeril and sent home. (Tr. 299, 305).

On July 27, 2006, Mr. Smith was seen by Dr. James Krieg at Chester Clinic. He presented with a 2 to 3 year history of low back pain with radiation into his right leg. On exam, he had "minimal tenderness" in his low back and "adequate" range of motion. Straight leg raising was negative. He weighed in excess of 350 pounds. Dr. Krieg said that his biggest problem was "obesity associated with low back pain and sciatica which is episodic." He was told to start a 1200 to 1500 calorie diet. (Tr. 181). In November, 2006, Dr. Krieg noted that Mr. Smith had periodic back problems for the past year, with occasional radicular symptoms. It had gotten "some worse since he went back to work at Gilster's." On exam, he had tenderness in the paralumbar region, with negative straight leg raising. He was prescribed Vicodin and Flexeril and told he could return to work in 5 days. (Tr. 181). On March 22, 2007, Mr. Smith continued to complain of back pain with radiation. Dr. Krieg ordered an MRI. On April 5, 2007, Dr. Krieg noted that the MRI "failed to reveal any significant pathology." He had tenderness in the low

6

back with slightly decreased range of motion. Dr. Krieg ordered physical therapy. (Tr. 180).

The MRI test result is at Tr. 210. The only abnormal finding was minimal central bulge at L5-S1, with some dehydration of disc material, but good preservation of disc space height.

Plaintiff began seeing Dr. Adrian Feinerman in 2007. The office notes are handwritten and difficult to read. Dr. Feinerman indicated a diagnosis of lumbar disc disease and prescribed Norco for pain. (Tr. 207-209).

A state agency physician completed a RFC assessment on August 27, 2007. (Tr. 194-201). He concluded that Mr. Smith could lift 10 pounds frequently and 20 pound occasionally, and could stand/walk for 6 hours and sit for 6 hours. He also concluded that Mr. Smith was limited in all postural activities "due to obesity." (Tr. 196).

Dr. Feinerman completed a Spinal Disorders form for the agency on November 17, 2007. (Tr. 202-203). He stated that plaintiff weighed 325 pounds and had back problems since a work injury in 2001. He had tenderness in his right lumbar muscles and sensory changes in his right thigh. He had no weakness or reflex change, and was able to ambulate normally without an assistive device. Straight leg raising was normal and he had no evidence of nerve root compression. He had reduced range of motion of the cervical and lumbar spines. Dr. Feinerman opined that Mr. Smith could stand or walk for 60 minutes continuously. He also stated that Mr. Smith did not need to change position due to pain more than once every 2 hours, and had "unlimited' ability to sit or stand at a stretch. (Tr. 203).

Plaintiff began seeing Dr. Ana Migone in July, 2008. She was to take over as his primary care physician. His prior primary care physician was Dr. Feinerman. He gave a history of back pain since a work injury in 2000, with another injury while working for Gilster 2 years earlier. He complained of constant low back ache with radiation into the right leg. He had not had

7

physical therapy. She noted that he had weighed over 450 pounds in the past, but now was down to 345 pounds. His BMI was 46. He had no palpable tenderness on exam and straight leg raising was negative. She recommended physical therapy and discussed with him the need to reduce or even discontinue his use of narcotic pain medication. (Tr. 248-249).

On a follow-up visit, he indicated to Dr. Migone that he had not attended physical therapy due to a transportation problem. She reviewed the results of his prior MRI, which she described as "minimal." A nerve conduction study had been done, but the results were pending. She again recommended physical therapy and reducing reliance on narcotic medications. (Tr. 246-247). On August 20, 2008, Dr. Migone noted that the nerve conduction study was normal. She again emphasized the need for physical therapy. (Tr. 242-243). In January, 2009, Dr. Migone noted he had not had any physical therapy because he developed a kidney stone. He was complaining of increased back pain which was not relieved by rest. He had palpable tenderness in his back and positive straight leg raising on the left. She ordered an MRI. (Tr. 237-238).

An MRI of the low back in February, 2009, showed disc desiccation at L5-S1 and mild posterior bulging of the L4-L5 disc with minimal encroachment on the thecal sac. There was moderate posterior bulging of L5-S1. (Tr. 250).

Dr. Hadi of Kentucky Spine & Brain saw plaintiff on referral from Dr. Migone on February 24, 2009. (Tr. 252). Plaintiff's weight was over 350 pounds. On exam, his back was tender and straight leg raising was negative. He reviewed the recent MRI which he said showed degenerative disc disease but "no surgical disease." (Tr. 253). Dr. Hadi recommended conservative treatment with nicotine cessation. He prescribed an anti-inflammatory drug and a muscle relaxer, and referred Mr. Smith Dr. Paul Juergens of the Pain Clinic. (Tr. 253).

Dr. Juergens first saw plaintiff on March 5, 2009. He had a normal range of lumbar

motion and full muscle strength. He was able to walk on his heels and toes and had a normal gait. He had tenderness to palpation over the lumbar paraspinal areas. Dr. Juergens gave plaintiff an epidural steroidal injection in March, 2009. He had some relief of his leg pain, but not of his back pain. He was to be scheduled for a second injection. (Tr. 260-266).

Dr. Migone ordered a functional capacity evaluation "for disability" which was done in May of 2009 at Herrin Hospital. (Tr. 311-323). Mr. Smith told the physical therapist that he had deteriorating discs in his back and that, if injections did not work, he would have surgery. (Tr. 314). He was able to lift and carry up to 20 pounds. He was noted to have an antalgic (limping) gait. (Tr. 314). He shifted in his chair frequently during sitting activities, and had to stop walking on the treadmill after about 5 minutes due to pain down his leg. He had difficulties with postural activities such as stooping and kneeling. (Tr. 315). In her summary, the physical therapist stated that Mr. Smith tested within the light physical demand level, but had difficulty with material handling activities and all low level activities such as stooping and kneeling. He also had difficulty with prolonged sitting, standing and walking. In the recommendations section of the form, she stated that he would have "significant difficulty tolerating full time employment." She recommended re-evaluation after his next injection and/or surgery. The evaluation took 44 minutes. (Tr. 316).

Dr. Juergens gave plaintiff an epidural steroidal injection on September 21, 2009. (Tr. 324). There is no record of a follow-up visit.

## Analysis

Plaintiff's second and third points are meritorious and require remand.

Plaintiff is correct that the ALJ's determination of his RFC was erroneous. The ALJ did not adequately analyze the effects of plaintiff's obesity. While the ALJ repeatedly referred to

9

the fact that plaintiff is obese, he did not decide what effect, if any, his obesity has on his RFC. In particular, the physical therapist who performed the functional capacity evaluation at Herrin Hospital noted limitations in postural activities such as stooping, kneeling and crouching, and in prolonged sitting, standing and walking.[4] The state agency physician specifically noted limitations in all postural activities due to obesity. The ALJ said that the state agency physician assessed plaintiff as able to do light exertion work, but did not mention the limitations that he assigned due to obesity. While the ALJ was not required to accept this evidence, he was required to discuss it and explain his reasoning for either accepting or rejecting it. See, ***Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).**

The Commissioner argues that the ALJ did, in fact, consider obesity because he mentioned several times that plaintiff is obese. However, it is not enough for the ALJ to simply state that plaintiff is obese. The ALJ is required to determine the effect of his obesity. SSR 02-1p; ***Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009)**.

The Commissioner also suggests that postural limitations are not relevant to the ability to do sedentary work. See, Doc. 29, p. 13. This is incorrect. While postural limitations do not necessarily preclude sedentary work, significant postural limitations may mean that the claimant does not have the RFC to do a full range of sedentary work. See, SSR 96-9p.

It should be clear that the Court is not suggesting that the ALJ was required to find that Mr. Smith has limitations resulting from his obesity. However, where the record contains medical evidence indicating that plaintiff does have such limitations, the ALJ was required to

---

[4]The physical therapist's name is illegible in the record. See, Tr. 316.

consider that evidence and decide what effect, if any, plaintiff's obesity has on his ability to function.

The ALJ's credibility analysis was also flawed. ALJ Biesman stated that Mr. Smith's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 20).

The Seventh Circuit criticized similar language in ***Parker v. Astrue*, 597 F.3d 920, 921-922 (7th Cir. 2010)**, stating that "It is not only boilerplate; it is meaningless boilerplate." As in *Parker*, the ALJ's statement is meaningless because it does not communicate what weight he actually gave the testimony. It is impossible to know from the ALJ's decision what parts of Mr. Smith's testimony he found to be not credible. At Tr. 21, the ALJ said that he "does not minimize the claimant's allegations of pain," but Mr. Smith's allegations of pain are not compatible with the ALJ's conclusions as to his RFC.

It is also problematic that the ALJ rejected plaintiff's testimony to the extent that it did not mesh with his findings as to RFC. This approach "turns the credibility determination process on its head by finding statements that support the ruling credible and rejecting those statements that do not, rather than evaluating the [claimant's] credibility as an initial matter in order to come to a decision on the merits." ***Brindisi v. Barnhart*, 315 F.3d 783, 787-788 (7th Cir. 2003)**.

The above errors compel the conclusion that the final decision of the Commissioner denying plaintiff's application for DIB and SSI must be reversed and remanded pursuant to sentence four of 42 U.S.C. §405(g).

**Conclusion**

It is therefore **ORDERED** that plaintiff's motion for summary judgment (Doc. 26) is **GRANTED**, and the Commissioner's final decision denying Mr. Smith's application for social security disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of **42 U.S.C. §405(g).**

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATED:  May 26, 2011.**


s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**United States Magistrate Judge**